## CÆSAR v. THE STATE.

1. When a person on trial for murder is found guilty of that offense, but with a recommendation by the jury that he be imprisoned for life in the penitentiary, he is convicted of a capital felony, and a writ of error sued out to review a judgment overruling a motion for a new trial in such a case is properly returnable to the Supreme Court.

2. In the trial of one charged with the offense of murder, the failure of the judge to charge upon the law of voluntary manslaughter will be no reason for reversing the judgment, when the counsel for the accused, in response to a statement by the judge addressed to him, that he did not think it necessary to charge the law of voluntary manslaughter, replied to the judge in such a manner as to indicate that he concurred in this view. A party can not complain of an error which his own conduct induced.

3. Failure to give instructions upon the subject of impeachment of witnesses, in the absence of a pertinent and proper request, is not cause for a new trial.

4. It has been repeatedly held by this court that it would be better, in charging on the effect to be given the statement of the accused, to follow the statute and there leave the matter.

5. The charges complained of were not erroneous for any reason assigned. The rulings on the admission of testimony do not present any error so prejudicial in its nature as to authorize a reversal of the judgment. The evidence, though conflicting, fully supported the verdict, and the discretion of the judge in overruling the motion for a new trial will not be interfered with.

Argued January 21,—Decided February 18, 1907.

Indictment for murder. Before Judge Martin. Twiggs superior court. December 19, 1906.

Gus Cæsar was arraigned upon an indictment charging him with the offense of murder, in that he killed Charles Rivers with a gun. The jury returned a verdict finding him guilty of the offense charged, with a recommendation that he be imprisoned in the penitentiary for life. He filed a motion for a new trial, upon the general grounds, which was amended by the addition of certain special grounds. The 4th special ground was in the following words: "Because the court erred in ruling out the testimony of Joe Phillips, as set out in the 10th and 11th pages of the brief of evidence, as follows: 'I run to Charles and called him two or three times, and turned to Gus and said, "Gus, you have killed that boy for nothing." Gus said, "Mens, as many as you believe that I shot this man intentionally, here is my gun,"—and before completing what defendant had said, objection was made by State's counsel, that it was a self-serving declaration, and because it was relating to a past event. The court remarking, 'What did you do when the gun fired?' Answer, 'I run right to Charles and called him two or three times. He failed to answer, and I turned to Gus—it wasn't two minutes—I got up right away—deceased failed to answer—and spoke to Gus.' The court remarked, 'The Supreme Court have ruled a case right direct,—they say half a minute afterwards. I rule it out again.' 'When I asked him for the gun he replied, "Mens, here is my gun, you can take it;"' and, on objection made, the court said, 'Any of his sayings after that would not be admissible,' and ruled it all out, and refused to allow witness to conclude what he had to say. This was error because it was admissible as a part of the res gestæ; and should have been admitted. The witness would have testified, 'Mens, here is my gun, you can take it, and if you believe I shot him intentionally, take my gun and shoot me now and here.' Note by the court: It was not stated what the witness would swear, but the court

would have ruled it out if it had been stated." The motion for a new trial was overruled, and the accused excepted.

*R. V. Hardeman,* for plaintiff in error. *John C. Hart, attorney-general,* and *E. D. Graham, solicitor-general,* contra.

COBB, P. J. (After stating the foregoing facts.)

1. The first question for determination is whether this case is within the jurisdiction of this court, or whether it should be transferred to the Court of Appeals. The constitutional amendment which made the changes in the jurisdiction of this court and created the Court of Appeals provides that "the Supreme Court shall have no original jurisdiction, but shall be a court alone for the trial and correction of errors in law and equity from the superior courts in all civil cases, whether legal or equitable, originating therein, or carried thereto from the court of ordinary, and in all cases of conviction of a capital felony, and for the determination of questions certified to it by the Court of Appeals." (Acts of 1906, p. 24.) The jury having recommended that the accused be imprisoned for life, instead of being sentenced to death, the question arises whether, after such a verdict, it can be said that there has been a "conviction of a capital felony" within the meaning of the constitution. If there has been, the case is within the jurisdiction of this court. If there has been no such conviction, the case must be transferred to the Court of Appeals. Lexicographers define "capital" as "affecting the head or life; incurring or involving the forfeiture of life; punishable with death; as treason or murder are capital offenses or crimes; capital trials; capital punishment." Century Dictionary and Webster's International Dictionary. If the statute imposes death as a punishment, and provides for no other punishment, of course the offense is a capital felony. The question now is, when the statute provides that the punishment shall be death or imprisonment, as the jury shall recommend, and the jury recommends imprisonment, whether the verdict of guilty of the offense is a conviction of a capital offense. In our view the expression "capital felony," when used in our law, is merely descriptive of those felonies to which the death penalty is affixed as a punishment under given circumstances to distinguish such felonies from that class in which under no circumstances would death ever be inflicted as a penalty for the violation of the same. Felonies, in the Penal Code, are thus

divided into two classes,—capital felonies and felonies not capital. If under any circumstances the penalty of death can be inflicted, the offense is capital, whether it is actually inflicted in a particular case or not. If under no circumstances the death penalty can be inflicted, the offense is not capital. If one were asked as to what are the capital felonies under the law of Georgia, the immediate reply would be treason, murder, arson, rape, etc.; still, in all of these cases, capital punishment can not be inflicted if the jury trying the offender shall recommend imprisonment for life as a punishment. In ex parte McCrary, 22 Ala. 65, the Supreme Court of Alabama had before it the question as to what was a capital offense in the meaning of the penal code of that State. This was an application for bail before trial, and whether the accused was entitled to bail depended upon whether the offense was capital. There was a provision in the penal code of that State authorizing a jury, in a case of murder in the first degree, to fix the punishment either of death or imprisonment for life in the penitentiary. It was held that on an application for bail before trial, the offense was to be treated as a capital offense; it being said that the fact that the jury, in their verdict, might provide for a punishment other than death did not authorize a holding that murder was not a capital offense. It was said, though, that it might be capital or it might not be, according as the jury might decide. The question as to what would be the classification of the offense after a verdict in which the jury had determined the punishment should be, imprisonment was not involved in that case. In ex parte Dusenberry, 11 S. W. 217, the Supreme Court of Missouri reached a conclusion similar to that in the Alabama case. The power of the jury was the same, and the question arose upon an application for bail before trial. In Texas there is a statute that no person under the age of 17 years shall be punished with death. In Walker v. State, 13 S. W. 860, the Court of Appeals of Texas held that a person under the age of 17 who was indicted for murder was not charged with a capital offense. This case is founded on the reason that under no circumstances could such a person be punished with death upon conviction. These are the only cases that have been called to our attention, or that we have been able to find, which deal at all with the question of what is a capital offense; and there is little in any of them that is helpful in the solution

of the question that is now before us. The constitution declares that it shall be the duty of the attorney-general to represent the State in the Supreme Court "in all capital felonies." Civil Code, §5860 (a). It has been, since the adoption of the present constitution, the practice of every attorney-general to appear in the Supreme Court to represent the State in every felony case where the law provides for punishment by death as a penalty, whether such penalty had been imposed in the particular case or not. While, of course, the practice of this department of the government is not controlling as to the interpretation of the constitution, the fact that the practice has continued for a long time without a single note of disapproval from the court is persuasive authority that may be looked to in determining what is the true interpretation to be placed upon the meaning of the term "capital felony," as it appears in the constitution and in our law. When it is remembered that during this time the office of attorney-general has been filled by such lawyers as Robert N. Ely, Clifford Anderson, George N. Lester, William A. Little, Joseph M. Terrell, Boykin Wright, and John C. Hart, the practice of the department, while not controlling on the question, takes rank as high authority for the position that one convicted of murder, though the jury has seen fit to inflict only imprisonment as a penalty, has been convicted of a capital felony within the meaning of the law. It may be that the General Assembly intended to use the term "capital felony" in the sense in which it had been interpreted by the attorneys-general of the State. In any event our conclusion in reference to the true meaning of the term is that meaning which has been placed on it by the various attorneys-general who have been called upon to interpret the constitution and determine their official duty thereunder.

2. Complaint is made that the court failed to charge the jury on the law of voluntary manslaughter. In a note to the ground of the motion in which this complaint appears, the judge says, that he stated to counsel, out of the hearing of the jury, that he did not think it necessary to charge the law of voluntary manslaughter, and that counsel replied that it was not; and that counsel, in his argument before the jury, contended that the accused should be either convicted of murder or acquitted. It is by no means certain that the law of voluntary manslaughter was at all involved; but

even if it was an error to fail to charge on that subject, the judge's failure to charge was brought about by the conduct of the counsel for the accused, and the accused can not now complain of such error.    *Steed* v. *State,* 123 *Ga.* 569 (2), and cit.

3. Complaint is also made that the court erred in failing to charge the jury on the law of impeachment of witnesses.    There was no request for instructions on this subject.    Hence this failure of the judge is not cause for a new trial.    *Steed* v. *State,* 123 *Ga.* 570 (3), and cit.

5. Complaint is made as to the charge of the court in reference that they might believe the statement of the defendant in whole or in part, and charged only that they might believe it in preference to the sworn testimony in the case, indicating that they must believe it all or none.    In a note to this ground the judge says that he read to the jury all of section 1010 of the Penal Code except the last sentence, which provides that the prisoner shall not be subject to cross-examination.    In the absence of a request, this was a sufficient instruction on the effect to be given by the jury to the statement of the accused.    In fact it has been said more than once that the better practice is to merely read the section of the Penal Code on this subject.    *Bone* v. *State,* 86 *Ga.* 118; *Ozburn* v. *State,* 87 *Ga.* 185; *Morgan* v. *State,* 119 *Ga.* 566 (1).

5. Complaint is made as to the charge of the court in reference to when a presumption of malice would arise.    This charge seems to be in exact accord with the rule laid down in *Mann* v. *State,* 124 *Ga.* 760.    The charge in reference to involuntary manslaughter in the commission of an unlawful act was not subject to the criticism that it was contradictory and calculated to mislead the jury.    The 3d, 4th and 8th grounds of the amended motion complain of rulings of the judge in the admission of testimony.    The 3d ground is not certified, and therefore will not be considered. The 8th ground does not set forth enough of the evidence to make the assignment of error intelligible, and therefore this ground will not be considered.    The 4th ground of the amended motion is set forth in the statement of facts.    This is the only assignment of error that has given us any serious trouble.    The note of the judge says that the answer of the witness was not stated; and therefore that portion of the ground which sets forth that the witness would have testified that Gus said, "Mens, here is my gun, you can take

it, and if you believe I shot him intentionally, take my gun and shoot me now and here," can not be dealt with as the evidence that was ruled out. It appears from the preceding portion of the ground that the witness had, before the solicitor-general interrupted him, used the following words, "Mens, as many as you believe that I shot this man intentionally, here is my gun." This statement was ruled out. The contention is that this was a part of the res gestæ, and should have been admitted for that reason. Let it be conceded that it was; was the error of the court in ruling it out so vital as to require a reversal of the judgment? According to the note of the judge, this was all that had developed, and no statement was made as to what would follow this merely preliminary statement which was quoted by the witness as having been made by the accused. It might have been followed by a statement incriminating him. On the other hand it might have been followed by a statement exculpating him. It is a mere matter of speculation as to what would have been the remainder of the statement of the witness, when we decline to consider the latter part of the ground, in which it is stated what the complete answer of the witness would have been; as we are compelled to do under the judge's note. This mere preliminary statement of the accused contains so little that throws any light upon the transaction that we do not feel authorized to hold that the rejection of this, and this alone, was such an error as to require a reversal of the judgment. If the assignment of error had been that the judge refused to allow the witness to complete the statement, and that the judge was informed as to what would have been the statement in its completed form, a different question would have been presented for decision. In the condition in which the record leaves this ground, we see no other proper course than to hold that the accused has failed to show prejudicial error. It remains only to consider the general grounds of the motion. The evidence for the State established a complete case of murder. The evidence for the accused, when taken in connection with his statement, would have authorized an acquittal upon the ground that the homicide was the result of misfortune or accident. We will not interfere with the discretion of the judge in overruling the motion.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*