## DAWSON *v.* THE STATE.

When the record and bill of exceptions in any case have been transmitted, through the proper channels of transmission, to the Court of Appeals, and that court, upon an examination thereof and of the certificate of the presiding judge, is of the opinion that the case is one of which the Supreme Court, and not the Court of Appeals, has jurisdiction, it may, by a proper order, direct such record and bill of exceptions to be transmitted to this court for determination of the question of jurisdiction; and this court has authority by rule or order to direct its clerk to notify the court of any such transmission which may be made; and if it should be decided by the Supreme Court that it, and not the Court of Appeals, has jurisdiction of the case, such case will be retained and entered on the docket of this court for hearing and determination.

Submitted February 3,—Decided February 20, 1908.

Question of practice, from Court of Appeals.

*Jesse W. Walters,* for plaintiff in error. *John C. Hart, attorney-general,* and *W. E. Wooten solicitor-general,* contra.

LUMPKIN, J. The Court of Appeals has certified to us the following question: "The Court of Appeals desires the instruction of the Supreme Court as to the following question of law arising

in the foregoing case: The plaintiff in error was convicted of a capital felony, and presented to the judge of the superior court a bill of exceptions, not specifying whether the writ of error was to be returnable to the Supreme Court or the Court of Appeals. The judge verified the bill of exceptions in usual form, but directed that the record be certified to the Court of Appeals; and the bill of exceptions and record were duly transmitted to this court by the clerk of the superior court. Counsel for plaintiff in error moves herein that this court transfer the case to the Supreme Court. Has this court, under the law or under any rule it has the authority to make, or under any rule the Supreme Court has now or can make and is willing to make, the power to transfer the case to the Supreme Court?"

If a case is returned to a court which has no jurisdiction of it, such court can not dispose of the case on its merits. Where a record is transmitted or returned to a court other than that where it should be, unless there is something in the law forbidding it to be done, there appears to be no reason why the court where it is thus lodged may not strike the case from its docket, and direct the record to be transmitted to the court of this State where it belongs, located within the same general territorial jurisdiction. In *Murdock* v. *Lillle,* 18 *Ga.* 719, a recovery was had in ejectment in one county; and a motion to set aside the judgment was made, because no process was annexed to the declaration. Pending the motion, the land was cut off from that county and attached to another. The presiding judge ordered the record in the case to be transmitted to the second county; and this judgment was affirmed, not on the ground of any enabling statute, but under the general power of the court. In *Noble* v. *Burney,* 116 *Ga.* 626 (42 S. E. 1009), a warrant to dispossess a tenant was sworn out, and a counter-affidavit lodged with the sheriff. The case might have been returned either to the city court of Floyd county or to the superior court. The sheriff actually returned the papers to the superior court, where the case was docketed. The clerk of both courts was the same person. Subsequently, at the request of counsel for the plaintiff, he struck the case from the docket of the superior court and entered it on that of the city court. It was held that he had no authority to do so. In the opinion, Simmons, C. J., said: "When it was thus placed on the docket, the case became one pend-

ing in the superior court. According to our views, it must remain in that court to be tried, or transmitted to the city court by an order of the judge of the superior court." The power to transmit by order was thus impliedly recognized. In *Klugman* v. *Laskowitz*, 102 *Ga.* 550 (27 S. E. 179), this court held as follows: "Where an execution was issued from a justice's court, and an affidavit of illegality filed thereto was returned to a justice's court in a different county, and upon trial in the latter court the affidavit of illegality was sustained and the levy dismissed, upon an appeal by the plaintiff in execution to the superior court of that county, that court, upon the fact appearing in the record that the affidavit of illegality together with the execution had been returned to the wrong magistrate's court, properly declined to act upon a motion to dismiss the appeal, and rightly dismissed the case with direction that the proceeding be returned to the proper court." The expression "rightly dismissed the case," from the context, was evidently used in the sense of striking the case from its docket or declining to entertain jurisdiction and sending the case to the court where it belonged. If it had meant a dismissal of the case on its merits, this would be to exercise jurisdiction, and such a dismissal would present the paradox of exercising jurisdiction *because the court did not have it.* The difference between a dismissal which is merely a striking of the case from the docket for want of jurisdiction, and a dismissal on the merits, is recognized in *Brannan* v. *Cheek*, 103 *Ga.* 353-354 (29 S. E. 937) ; *Cottle* v. *Dodson*, 25 *Ga.* 633-634.

There is, therefore, nothing illegal in transmitting papers, in a proper case, from one court of this State to another, to which they rightly belong, unless there is something in the law which prohibits or prevents it from being done, though the transmission by the first court may not be an adjudication binding the second court to docket the case. Is there anything in the law establishing the Court of Appeals which prevents the passing of an order by that court for transmitting to this court a record which it is of opinion has been improperly sent to that court, for determination here of the question of jurisdiction; and the passing of a rule by this court which will provide for examining the record, and ordering the case to be docketed, if properly here?

Prior to the establishment of the Court of Appeals, all bills of

exceptions were by law required to be sent to this court. The presiding judge included in his certificate a direction of that character, and the clerk so transmitted them. Civil Code of 1895, §§ 5554 et seq. There was no statutory provision as to the manner or medium of transmission. That was regulated by rule of this court, and there are various rules on the subject. Civil Code of 1895, § 5607 et seq. It need hardly be said, that, if the manner and medium of transmission could be regulated by rule, the Supreme Court which made the rule could change it; and that the Supreme Court has general authority to make for itself rules of practice not inconsistent with constitutional or valid statutory law. Civil Code of 1895, § 5498, par. 5; *McCowan* v. *Brooks,* 113 *Ga.* 384 (39 S. E. 112).

The rule of this court above referred to, which declared that neither a party nor his counsel should be entrusted by any clerk with these documents for transmission, but that the exclusive medium of carriage should be by mail or express, unless a clerk or a deputy should deliver the papers in person, was intended to guard the proper transmission against delays, carelessness, or even intentional wrong between the official custody of the record in the trial court and its official custody in the reviewing court. The Court of Appeals has adopted the same rule as that of this court, above mentioned. As the practice there on this subject is similar to that of this court, and as it is a court of last resort with the same rules safeguarding the transmission of records, we see no reason why the arrival of papers in that court should not be presumed to have been by proper transmission, as well as if sent to this court directly.

The Court of Appeals was established by an amendment to the constitution which was proposed by act of the legislature of 1906 (Acts 1906, p. 24). Jurisdiction of certain classes of cases was left in the Supreme Court, and that over other classes of cases was conferred on the new court. No elaborate act regulating practice in the Court of Appeals was passed, but the constitutional amendment provided that "Any case thereafter carried to the Supreme Court, which is of the class of which the Court of Appeals has jurisdiction, may be transferred to the Court of Appeals, under such rules as the Supreme Court may prescribe, until otherwise provided by law; and the Court of Appeals shall try the cases

so transferred." It was also provided that "The Court of Appeals may at any time certify to the Supreme Court any other question of law concerning which it desires the instruction of the Supreme Court for proper decision," and still further that "The laws relating to the Supreme Court, as to qualifications and salaries of the judges, the designation of other judges to preside when members of the court are disqualified, the powers, duties, salaries, fees, and terms of officers, the mode of carrying cases to the court, the powers, practice, procedure, times of sitting, and costs of the court, the publication of reports of cases decided therein, and in all other respects, except as otherwise provided in this constitution, and until otherwise provided by law, shall apply to the Court of Appeals, so far as they can be made to apply." Uniformity was considered desirable, as far as practicable under the law, between two courts of last resort. As the classification of cases to be sent to each court was expressed in a brief and general description, cases might be missent, and it would be necessary to determine any question arising as to whether the case should be in one court or the other. As the Supreme Court had been long established, and the Court of Appeals was being established, it was perhaps more likely that cases would be sent to the former court which should be sent to the latter, than the reverse. Was it impliedly intended to prohibit this court from receiving a record which might have been sent by mistake or error to that court, and thence transmitted here? Did the legislature and the people, presumably knowing that this court had considered and decided that it had power by rule to regulate the manner of transmitting a record to it, and that such rules had long been in force, intend to negative that power in the future? The power to make rules of practice has always been considered as inherent in courts. Was it the intention of this constitutional amendment, that, where a defendant had been convicted of murder, and had excepted to the decision, if by accident or mistake his bill of exceptions should be lodged in the Court of Appeals (which sits in the same building, and at present holds sessions in the afternoon in the Supreme Court room), the accused should hang without a hearing of his exceptions, merely because the papers were transmitted so as to be placed or filed in the wrong box or drawer? We do not think so.

The Court of Appeals is a court of last resort in cases for its determination under the law. It is not, like the courts of appeals in some States, an intermediate court, with right of certiorari or writ of error to this court therefrom. It was necessary to lodge somewhere the ultimate determination of questions of jurisdiction and transmission of cases between the two courts. The constitutional amendment declared in terms that this court might transfer cases to that court; but did not in terms prescribe a like power in that court to finally determine the matter of transferring cases and sending them to the Supreme Court. This involved no criticism upon the Court of Appeals. Had exactly similar powers on this subject been conferred on each court, there might have been differences of opinion as to jurisdiction and transmission of cases between the courts, involving possible conflicts in rulings on that subject and uncertainty confusing to the bar, which would have been unfortunate. It was deemed best, for the sake of uniformity, that one court should deal with constitutional questions; and in establishing the Court of Appeals by a constitutional amendment, it was also considered advisable that the determination of the Supreme Court in regard to jurisdiction and transmission of cases between the two courts should be controlling.

Construing the clause in the constitutional amendment, on the subject of transferring cases, together with other clauses of the amendment, the recognition of the existing powers in the Supreme Court, the long-established practice of making rules by this court touching the transmission of cases, the inherent power existing in it, and the provision in reference to certifying questions from the Court of Appeals to this court, we think the intention was substantially that this court should have the power of ultimate determination of jurisdictional questions between the two courts; but that there was nothing to prohibit the Court of Appeals from causing, under proper order, a record which it deemed should be in this court to be transmitted here for final determination of the question; nor preventing this court, upon its receipt, from determining as to the jurisdiction of the case, and directing it to be docketed here or returned accordingly. We think this can be lawfully arrived at by the adoption of a rule by this court, and by the transmission of such a record as above indicated to this court, under proper order, for the determination of the jurisdictional

question and the giving of direction accordingly. We have now adopted such a rule.

In the present case the certificate of the judge to the bill of exceptions stated that the record and the bill of exceptions should be transmitted from the superior court where the conviction was had to the Court of Appeals. The defendant was convicted of murder, though, on recommendation of the jury, he was sentenced to life imprisonment instead of to be hung. Under the ruling in *Cæsar* v. *State*, 127 *Ga.* 710 (57 S. E. 66), the jurisdiction of the case is in this court, and not in the Court of Appeals; and the record should have been directed to be transmitted to this court, and not to that. How shall such error in direction be treated? It is only possible to consider it as having one of two effects,— either as invalidating the entire certificate, which operates as a writ of error, and rendering it a nullity, as if no writ of error has been granted; or to hold that the certificate is not entirely void, but that the error referred to is only an irregularity, which does not vitiate it in toto.

After the rendition of certain decisions dismissing bills of exceptions, the legislature in 1893 passed an act providing as follows: "It shall be the duty of the judge, to whom any bill of exceptions is presented, to see that the certificate is in legal form before signing the same; and no failure of any judge to discharge his duty in this respect shall prejudice the rights of the parties by dismissal or otherwise." Civil Code of 1895, §5534. This is very broad in its terms, and has been recognized as modifying the somewhat rigid practice previously prevailing, although one of the Justices expressed doubts in regard to the act. *Gregory* v. *Daniel & Sons*, 93 *Ga.* 795 (20 S. E. 656). The trend of legislation and of recent decisions of this court has been in the direction of hearing cases on their merits where it can be lawfully and properly done. Civil Code of 1895, §5563 et seq. We think that this misdirection should be treated rather as an irregularity than as rendering the entire certificate a nullity. It has been held that, where a case was by the presiding judge in his certificate directed to be transmitted to a term of this court earlier than the one to which it was properly returnable, and when there was no jurisdiction to hear it, and where the record and bill of exceptions were so transmitted and docketed, this was a mere irregularity, and the court

would cause the case to be docketed to the proper term, on motion. *Kaufman* v. *Ferst,* 55 *Ga.* 350 (3) ; *Jones* v. *Warnock,* 67 *Ga.* 484; *Smith* v. *Willis,* 107 *Ga.* 793 (33 S. E. 667) ; *Gordon* v. *Gordon,* 109 *Ga.* 264 (34 S. E. 324) ; *Ivey* v. *City of Rome,* 126 *Ga.* 806 (55 S. E. 1034). ·

In·Kentucky, when the case next cited was decided, it appears that certain appeals could be taken to the superior court and others to the Court of Appeals, and that the statute creating the superior court provided that if an appeal should be taken to it, when the Court of Appeals had jurisdiction, the case should not be dismissed, but should be transferred to the latter court. An appeal was taken from the trial court which should have been sent to the Court of Appeals. The order granting the appeal recited that it was asked and granted "to the Supreme Court." There was no such appellate tribunal in that State. The papers were transmitted to the superior court. It was held that the ·expression in the order granting an appeal to "the Supreme Court" was a mere clerical error which would not invalidate the appeal; but that the papers should be transmitted to the Court of Appeals, where they belonged. The matter of intertransmission between the superior court and the Court of Appeals was provided for by the statute of that State; but the case is cited to show that the error in referring to an appellate court which had no existence ("the Supreme Court") was merely an irregularity.

If it should be suggested that the transmitting to this court of a record and bill of exceptions improperly returned to the Court of Appeals is matter calling for legislation, the answer is that we have shown that the mode and medium of transmission· can be dealt with by rule of this court, in the absence of any positive law to the contrary. There is no statutory law preventing such a rule. If there is anything denying the power thus to proceed, it must arise out of the clause in the constitutional amendment, which authorizes this court to transfer cases to the Court of Appeals, but does not in terms declare that the Court of Appeals may transfer cases to this court. If from this provision a negative pregnant can be drawn, denying the right to have cases improperly carried to the Court of Appeals transmitted to this court, it is a constitutional prohibition, and the legislature can no more correct the diffi-. culty than can this court. The constitutional inhibition would be

just as binding on the legislative as on the judicial branch of the government. Owing to the overwhelming amount of business which was being brought to this court, it was found necessary to establish another court of review. The purpose was to furnish an. additional court, and more ample opportunity for a review of alleged errors than was possible under then existing circumstances. It could never have been contemplated by the legislature or the people that, in doing this, they were digging a pitfall into which parties might accidentally stumble, and that they were by solemn constitutional declaration prohibiting either the courts or the legislature from extricating parties from such misfortune, though it might cost such persons their property or their lives. If this writ of error should be held to be a nullity, the time has expired for tendering a bill of exceptions under the law; and such would likely be the condition in other cases of similar character, since it is not probable that the bill of exceptions will be signed, the record prepared and transmitted, the error discovered, and the papers returned,—perhaps to a distant county—in time to re-present the bill to the judge within the time limited by the statute for that purpose. The answer to the question propounded by the Court of Appeals appears in the foregoing opinion.

*All the Justices concur, except Atkinson, J., who dissents.*