## 41963. JOLLEY v. THE STATE.
(331 SE2d 516)

BELL, Justice.

Charles Albert Jolley was convicted of the aggravated assault of Robert Temple and the felony murder of David Reid Corley. He appeals, and we affirm.[1]

On August 18, 1983, co-workers David Corley and Robert Temple finished work at noon and began drinking. At approximately 5:00 p.m. Corley and Temple went to a bar where Corley's estranged wife Dianne worked as a nude dancer. Dianne and another nude dancer

---

[1] The felony murder and aggravated assault were committed August 19, 1983. Jolley was indicted September 23, 1983, and found guilty and sentenced on February 10, 1984. He moved for a new trial on March 9. The order denying his motion was entered June 22, 1984. Notice of appeal to the Court of Appeals was filed July 20. The case was transferred to this court on September 7. The record was completely certified on November 28, 1984. The case was docketed in this court on January 16, 1985, and oral arguments were heard on March 12.

agreed to have supper and spend the evening with Corley and Temple in exchange for one hundred dollars apiece. While waiting for Dianne's shift to end at 8:00 p.m., Corley and Temple were joined by Albert Jolley, who was Dianne's current boyfriend. Corley and Jolley had been friends for fifteen years, and even though Corley knew that his wife was living with Jolley, the two men showed no signs of animosity at that time. At the end of Dianne's shift Corley had an altercation with her and threw a punch that missed Dianne but hit Jolley in the mouth, splitting his lip. Dianne kicked at Corley and then ran with Jolley to a car driven by Jolley's niece, Wanda Suttles. As Ms. Suttles attempted to drive out of the parking lot, Corley tried to kick the car. Jolley testified that Corley challenged him to get out of the car and threatened to kill him.

Wanda Suttles, Dianne Corley, and Albert Jolley all testified that after they left the bar they took a friend home, visited other friends, and finally went to Jolley's mother's house, where they all lived. The three arrived home at about 9:30 p.m., and ate. Jolley and Dianne then went to bed.

Robert Temple testified that after Corley scuffled with Dianne he was not visibly upset or angry. Temple stated that Corley and he left the bar, bought and drank some beer, and took some drugs. According to Temple, at about 11:00 p.m. they went over to Jolley's house to pick up Dianne for the dinner that they thought was still planned. Temple testified that when they drove by Jolley's house, no one appeared to be home, so Corley drove about one hundred feet down the road, turned around, and parked to wait for Jolley and Dianne to come home. Approximately twenty to thirty minutes later, Jolley and Dianne drove up, and Corley then slowly drove past the house. Temple testified that he saw the two getting out of their car. Corley parked the car sixty to one hundred feet down the street and told Temple that he was going to get Dianne. Temple testified that Corley showed no signs of being upset or angry. Temple stayed in the car as Corley walked out of sight toward Jolley's house. Temple stated that after about forty seconds he heard one gun shot. Since he could not see Corley or what was occurring in the yard, Temple decided to leave the car and investigate. Upon entering Jolley's yard, Temple was surprised by Jolley, who suddenly appeared from behind a tree and confronted him with a gun. According to Temple, Jolley held the gun to Temple's head and told him he had no business there. Jolley ordered Temple to go with him, and asked Temple what he wanted to do. Temple told Jolley that he wanted a drink. Temple said that at that time he did not know that Corley had been shot and that, in fact, he never saw Corley again. Jolley and Temple got into Corley's car, and Jolley drove Temple to a bar near Hartsfield Airport. Jolley left Temple at the bar and drove off in Corley's car. Temple stated that he

hitched a ride home with a patron of the bar at which he had been dropped off.

Jolley and Dianne denied the validity of Temple's testimony. Jolley testified that he was in bed with Dianne at about 11:30 p.m. when he heard a car driving up and down the street in front of his house. Jolley stated that he became suspicious and decided to go outside to investigate. For protection, Jolley took his mother's .22 pistol with him. Jolley testified that the car drove by once more, stopped just down the street from his house, and Corley and Temple got out. The two men split up and approached Jolley's yard from different directions. According to Jolley, he confronted the first to enter his yard, Temple, and told him to leave. Jolley testified that Temple took his advice and walked away.

Jolley said he then proceeded to intercept Corley. Jolley stated that he stepped into the illumination of the street light in order to make his gun visible to Corley. Pointing his gun at Corley, Jolley told him that he had no business causing trouble there and ordered him to leave. Jolley said that at some point in this confrontation he cocked the gun for audible effect. Jolley testified that Corley said "screw you wimp" and reached for his back pocket. Fearing that Corley was reaching for a weapon, Jolley jumped behind a tree and fired his gun. Corley fell to the ground, mortally wounded. After checking Corley for a pulse and finding him to be still alive, Jolley called Temple over and told him to get Corley into Corley's car and take him to the hospital. Jolley testified that he knew that Corley was still alive at that time because when Temple and Jolley were putting him in the car, Jolley dropped him on his head, causing him to moan. Jolley told Temple to telephone if Corley was hurt seriously. Temple never did.

Jolley testified that during this time he noticed that Dianne was on the porch and told her to go inside. Dianne testified that she had come outside after being awakened by "a noise." She stated that when she went out on the porch she saw Jolley motioning a man to go up the street. When Jolley told her to go inside she obeyed, and went back to bed. She did not see Jolley again until he woke her up about an hour later. Jolley testified that after he told Dianne to go inside and helped Temple put Corley into Corley's car, he got into his own car and began following Temple. Shortly thereafter, he discontinued following Temple and went directly to Terry Watson's house to hide his gun. He testified that he returned home about an hour later at about 1:00 a.m. Jolley never called the police to report the incident.

Terry Watson testified that that night at approximately 10:30 p.m. Jolley and Dianne visited him. Jolley showed Watson his swollen lip and told Watson about the scuffle with Corley at the bar. Watson also testified that Jolley returned at about 1:00 a.m. that same night and asked him to hide a .22 caliber pistol.

Corley's body was found beside a secluded road in Fulton County, about two and one-half miles from Terry Watson's house. Corley's car was discovered abandoned about three and one-half miles from where his body was found.

On August 20 Jolley and Dianne turned themselves in to the police after they learned of an outstanding murder warrant for their arrest. Once in custody, according to the testimony of Detective Jack Lambert, Jolley confessed to the shooting but stated that Dianne had nothing to do with the killing.

1. Although Jolley does not challenge the sufficiency of the evidence, we find that viewing the evidence in a light most favorable to the prosecution a rational trier of fact could have found the elements of the crimes of murder and aggravated assault beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error Jolley, relying on *McCrary v. State*, 252 Ga. 521 (314 SE2d 662) (1984), contends that the trial court erred when it allowed the jury to consider a verdict of felony murder, because the indictment did not give him sufficient notice of that possibility. The malice murder indictment charged that Jolley "did unlawfully and with malice aforethought, cause the death of David Reid Corley, a human being, by shooting him with a pistol." The trial court charged the jury on felony murder, with aggravated assault as the underlying felony.

In *McCrary v. State*, supra, 252 Ga. at 524, we held that "a defendant indicted only for malice murder cannot be convicted of felony murder unless the defendant has been put on notice of the felony by the facts alleged to show how the murder was committed." In *Middlebrooks v. State*, 253 Ga. 707 (2) (324 SE2d 192) (1985), although we noted that the better method is to allege in the murder indictment the specific felony to be used in a felony murder charge, we held that a malice murder indictment which alleged that the defendant shot the victim with a pistol was sufficient to put the defendant on notice that he committed an aggravated assault on the victim. Accordingly, the malice murder indictment in the instant case was sufficient to show that Jolley committed an aggravated assault upon Corley. We therefore find no error with the trial court's presentation of felony murder to the jury.

3. In his second enumeration of error Jolley contends that the trial court erroneously refused to charge the jury as to self-defense with respect to the aggravated assault charge involving Robert Temple. The record, however, reveals no evidence that Temple acted in a way to cause Jolley to reasonably believe that drawing a pistol was necessary in order to defend himself against an imminent threat of force by Temple. Since this charge of self-defense was not warranted

by the evidence, we hold that the court did not err in refusing to give it. *Kilgore v. State*, 251 Ga. 291 (4) (305 SE2d 82) (1983); *Harper v. State*, 249 Ga. 46 (3) (287 SE2d 211) (1982); *Stevens v. State*, 247 Ga. 698 (9) (278 SE2d 398) (1981).

In a second prong of Jolley's second enumeration, and in his fourth enumeration, Jolley contends that the trial court erred in failing to charge that the defense of self-defense applied to the aggravated assault comprising the underlying felony (i.e., the aggravated assault on Corley) of the felony murder charge. We find, however, that a fair reading of the trial court's charge clearly indicates that the court charged that Jolley's defense of self-defense could apply to the underlying felony. Moreover, assuming without deciding that the trial court did not so charge and that a failure to do so would be error,[2] the appellant is precluded from raising such an error, since defense counsel did not object to the charge on that ground or reserve the right to object on motion for new trial or on appeal. *Jackson v. State*, 246 Ga. 459, 460 (271 SE2d 855) (1980); *Rivers v. State*, 250 Ga. 303 (7) (298 SE2d 1) (1982).

4. In his third enumeration of error Jolley contends that the trial court erred by charging our self-defense statute in its entirety. OCGA § 16-3-21. Specifically, Jolley contends that by charging subsection (b), which contains exceptions to the justifiable use of force enumerated in subsection (a), which exceptions Jolley contends were unwarranted by the evidence, the trial shifted the burden of proof to him by making it necessary for him to disprove those exceptions. We find no error.

First, "[i]t is not usually cause for a new trial that an entire Code section is given . . . even though a part of the charge may be inapplicable under the facts in evidence." *Keller v. State*, 245 Ga. 522 (1) (265 SE2d 813) (1980); accord *Estes v. State*, 251 Ga. 347 (2) (305 SE2d 778) (1983). Moreover, the trial court's charge clearly shifted no burden of proof to Jolley, as the trial court charged the jury that "the burden is upon the state to prove that the defendant did not act in justification to a reasonable and moral certainty and beyond a reasonable doubt."

For the foregoing reasons there is no merit to Jolley's claim that the trial court's charge was harmful.

5. Before trial the defense filed a motion with the state requesting the disclosure of any agreements entered into between the state and any prosecution witnesses concerning the disposition of any criminal charges pending against those witnesses. In his fifth enumeration

---

[2] See *Ely v. State*, 244 Ga. 432, 433 (260 SE2d 345) (1979), which held that self-defense is not a defense to felony murder.

of error Jolley contends that the trial court erred in failing to grant his motion for new trial on the basis that the prosecution failed to disclose an agreement not to prosecute Terry Watson for the possession of marijuana.

The state is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness, and a "failure to disclose such an agreement constitutes a violation of the due process requirements of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972)." *Owens v. State*, 251 Ga. 313 (1) (305 SE2d 102) (1983).

We find, however, that no error was committed in the instant case. Initially, we note that at the hearing on the motion for new trial Jolley completely failed to show that any agreement not to prosecute Watson in exchange for his testimony at trial existed between Watson and either the District Attorney's office or the College Park police. To the contrary, the assistant district attorney who handled Jolley's prosecution testified that before trial he provided Jolley's counsel with a copy of the College Park police report indicating that two bags containing green leafy material had been found in Watson's house; that he had made no deals with Watson; and that he did not know of any deals with Watson, but that he had inquired whether Watson had been arrested on any charges and was told that Watson had not been. The trial court, by denying Jolley's motion for new trial, implicitly concluded that no agreement existed. Based on the foregoing we conclude that such a finding was authorized, and we therefore find no due process violation. *Owens v. State*, supra, 251 Ga. at 315.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 19, 1985 —
REHEARING DENIED JULY 24, 1985.

*Sparrow & Eidson, James A. Eidson,* for appellant.
*E. Wayne Wallhausen,* for appellee.