## EX PARTE McCRARY.

1. When application is made to the Appellate Court for writs of *habeas corpus* and *certiorari*, to revise the action of a circuit judge in refusing bail to a prisoner charged with murder, and the bill of exceptions states that the cause was continued "on the affidavit of the prosecutor, which disclosed the absence of a material witness for the State, who had been regularly subpœnaed," &c., but the affidavit itself is not set out in the record, the Appellate Court will not intend that the affidavit did not satisfactorily account for the absence of the witness according to the requirements of the statute. If the affidavit was defective, it should have been set out in the record, or its defects in some other way made part of the petitioner's case.

2. Although, since the adoption of the Penal Code, the jury have the power, in all cases of murder in the first degree, of determining whether the punishment shall be death or imprisonment for life in the penitentiary, yet this does not make the offence less *capital* than before. The inquiry before the magistrate, on a question of bail, still is, whether the offence charged may be capitally punished; if it may, and the proof is evident or the presumption great, it is not bailable.

3. When an examination has been had before a magistrate, or a judge of an inferior tribunal, in whom is reposed a sound discretion to admit to bail or not, as they may think proper under all the facts and circumstances of the case,

the Appellate Court will always presume that this discretion has been correctly exercised, until the contrary is plainly made to appear.

Application for writs of *habeas corpus* and *certiorari*, to revise the action of the Hon. ROBERT DOUGHERTY, presiding in the Circuit Court of Barbour, in refusing bail to the petitioner. The facts on which the application is based, are set forth in the opinion.

SAMUEL F. RICE, for the petitioner :

The necessity which will exculpate the slayer, need not be actual. A reasonable belief of necessity is equivalent to an actual necessity. Oliver v. The State, 17 Ala. Rep. 587 ; Quesenberry v. The State, 3 S. & Por. 308 ; Foster's Crown Cases, 263–264 ; The People v. Rector, 19 Wend. Rep. 590 ; The People v. Shorter, 4 Barb. Sup. Ct. Rep. 460 ; The People v. Shorter, 2 Comstock's Rep. 193 ; Levett's case, Cro. Car. 538.

This principle applies whenever or wherever such reasonable belief exists in the minds of the slayer and induces the fatal stroke. Will v. The State, 1 Dev. & Batt. 170 ; Cook's case, Cro. Car. 537.

If the principle be admitted, it is nothing but self deception or a substantial refusal to enforce the principle, to say that although such reasonable belief did exist, and although it produced the fatal stroke, such killing is murder, because, forsooth, such reasonable belief was not produced in a particular mode ; that is, by an actual attempt to execute threats to kill the slayer, or to do him great bodily harm.

The true inquiry in cases of homicide is, what was the disposition with which the fatal act was done. This can be solved only by considering (not only one cause, but) every cause which is then exciting the slayer—whether such cause be an actual attempt to kill or hurt the slayer, or previous threats to do so, made by the party slain, and honestly and reasonably believed by the slayer at the time the fatal act was done. Will v. The State, 1 Dev. & Batt. 170 ; State v. Zellers, 2 Halsted's Rep. 230. That temper which at one time might not be excited, might, under the excitement of other circumstances, be more easily roused, and therefore it may be received by the jury, to show the state of mind of

the parties. 2 Halsted's Rep. 230, *supra*; Riddle v. Brown, 20 Ala. Rep. 412; Goodrich v. The State, 19 Vermont Rep. 116. And so, although it is a fixed principle of law, that drunkenness is no excuse for crime, yet it is equally a fixed rule of law, that the fact of the drunkenness of the slayer, at the time of the homicide, is admissible evidence to the jury to show the state of mind of the slayer, and thus repel the presumption of malice. Swan v. The State, 4 Humph. Rep. 136. " The greatest care should be taken not to confound a vindictive act, and such an act as shows a vindictive disposition. Every case of manslaughter, perpetrated in anger, is a vindictive act; whilst every case of murder exhibits the vindictive disposition." 1 Dev. & Batt. 135. "It is not to passion, as such, that the law is benignant, but to passion springing from human infirmity. The law holds that passion springing from ordinary frailty, is not malice." 1 Dev. & Batt. 167, 168, 172. It is said, the fact of bad character does not deprive the party slain of his right to his life, nor excuse any man in taking it. And it may with equal truth be said, that the good character of the slayer does not excuse or justify him in killing any other man. Yet, notwithstanding the truth of each of these propositions, it is admitted to be clear, that the good character of the slayer must be admitted even to generate a doubt of his guilt. And upon like reasoning, the character of the deceased is admissible, although it (like the drunkenness or good character of the slayer,) is not, *per se*, either a justification or excuse for crime. The State v. Wells, 1 Cox's N. J. Rep. 428, 429.

Under the 40th section of the 8th chapter of the Penal Code, and the previous laws, the petitioner is entitled to bail "as matter of right," because the record shows that he was not tried at the first term of the court, at which he was properly triable, and the cause was continued for the State for the absence of a witness for the State, the defendant not consenting to such continuance, and the contents of the affidavit made for the continuance, as recited in the record, do not satisfactorily account for the absence of the witnesses for the State. *Ex parte* Croom and May, 19 Ala. Rep. 563. But it is contended by the counsel for the State, that this court must presume, that the affidavit did satisfactorily account

for the absence of the witness. To this it is replied, that "no person shall be accused, arrested or detained, except in cases ascertained by law, and according to the forms which the same has prescribed." 11 section of Bill of Rights. No person is to be kept in custody and deprived of his liberty, by force of any mere intendment as to the correctness of any inferior court or magistrate. Again : it is clear that the legal effect of the record would be altered by indulging such presumption. For, under the record as it now appears, the petitioner is entitled to bail, as matter of right, and by presuming what does not appear, it is proposed to change the effect of the record and thereby to destroy the right of the petitioner. The court below, on a direct application to annul or change the record, by inserting a satisfactory account of the absence of the witness, could not allow it. For the recital of the contents of the affidavit on the record is conclusive as to its contents, and nothing can be added to it, which would change the legal effect of the affidavit as recited in the record. Bishop's Heirs v. Hampton, 19 Ala. Rep. 792.

Under our constitution, bail is to be allowed "except for capital offences." The phrase "capital offences," as used in the constitution, had a fixed legal signification at that time, and was there used in that sense. It meant only such offences, as when ascertained by a jury, or by plea of guilty, were visited by law with the death penalty. Under our Penal Code, murder in the first degree is not, when ascertained by a jury or by plea of guilty, visited by law with the death penalty. The punishment depends on the discretion of the jury, and may be either death or confinement in the penitentiary, as the jury direct. If the jury do not direct or find the punishment, the law will not pronounce any judgment. State v. Cobia, 16 Ala. Rep.; State v. Truss, 9 Porter. Inasmuch as murder in the first degree may or may not be punished with death, according to the discretion of the jury, it is not a "capital offence," in the sense in which that phrase was used in the constitution; and not being a capital offence in that sense, a party indicted for murder is entitled under the constitution to bail "as matter of right." A reasonable apprehension of personal violence, defined and illustrated : it may well exist in consequence of acts occurring a year in the past.

Houliston v. Smyth, 11 Eng. Com. Law Rep. 64; Houliston v. Smyth, 3 Bing. 127.

M. A. BALDWIN, Attorney General, and P. T. SAYRE, *contra*.

GIBBONS, J.—The petitioner, James A. McCrary, is in the jail of Barbour county, under an indictment for murder. An application was made to the presiding judge, at the last term of the Circuit Court of Barbour, for bail, which was refused. The petitioner has now made an application to this court for a *habeas corpus* and *certiorari*, in order to revise the action of the presiding judge who refused the bail. A transcript of the record and proceedings in the court below is here filed, with the petition, and on it the prisoner bases his application.

The record shows, that the indictment was found at the Fall term, 1852; that the cause was called for trial; that the State " moved for a continuance, and produced the affidavit of the prosecutor, which disclosed the absence of a material witness. for the State, who had been regularly subpœnaed, &c. The court granted a continuance, the defendant announcing himself ready for, and demanding a trial." After the continuance was granted, the prisoner applied for bail, on the facts which are disclosed by the bill of exceptions.

The petitioner here contends that his application should be granted: 1. Because the record does not show that the State, according to the requirement of the statute, (Clay's Digest, 444, § 40,) satisfactorily accounted for the absence of the witness, for the want of whose testimony the cause was continued; 2. That, since the adoption of the Penal Code, all homicides are bailable, inasmuch as the jury, in all cases which, before the adoption of that code, were punished capitally, now have the power to decide whether the punishment shall be death or the penitentiary for life; and the jury having this power to affix the punishment to murder in the first degree, the courts and judges cannot take upon themselves to say that any offence is capital, until after the jury has passed upon it; 3. That he is entitled to bail on the facts set out in the bill of exceptions.

The record does not set out the affidavit for the continuance;

we are, therefore, entirely in the dark, as to what it does or does not contain. The bill of exceptions states, that the cause was continued " on the affidavit of the prosecutor, which disclosed the absence of a material witness for the State, who had been regularly subpœnaed," &c. Whether the affidavit *satisfactorily accounted* for the absence of the witness, or whether it accounted for his absence at all, is a fact on which we can form no opinion until we can see it; nor does the petitioner enlighten us upon this subject, in any manner whatever. But it is contended, that, until the record discloses the fact that the affidavit did account for the absence of the witness, according to the requirements of the statute, we must intend that it did not. Our conclusion is otherwise. We cannot intend anything against the affidavit, until the contrary is shown. If it did not contain all that the law required, it should have been incorporated in the record, so as to give us evidence of it; or its defects should have been made part of the petitioner's case, by stating that the State had not complied with the law in this respect. This would have brought the defects of the affidavit, if such there were, to our notice, in such a manner that we could have acted upon them. But in the absence of the affidavit, and in the absence of any showing on the part of the petitioner, that it is in any respect defective, we cannot intend that it is so. This is distinguishable from the case of Croom & May *Ex parte*, 19 Ala. 561. The petition in that case presented a state of facts on which the record was silent, and which entitled the petitioners to bail. This court decided, that the petitioners having shown a case outside of the record, and on which the record was silent, which entitled them to bail, it would not intend that the proceedings of the court were what the law required them to be, and thus destroy by intendment the case made by the petitioners. To this decision we still adhere, but we can see no point decided in that case which can control the question under consideration.

We think the second ground taken by the petitioner equally untenable. It is true, that, since the adoption of the Penal Code, the jury, in all cases of murder in the first degree, have the power, and it becomes their duty, to say whether the accused shall be punished with death, or sent to

the penitentiary for life; but this does not authorize us to say that murder in the first degree is not a capital offence. It may be capital, or it may not, according as the jury decide. The fact, however, that they may decide, does not make the offence less capital before the trial is had, in the sense in which the term " capital offence" is employed in the constitution.

The language of the constitution is: " All persons shall, before conviction, be bailable by sufficient securities, except for capital offences where the proof is evident or the presumption great." The obvious intention of the framers of the constitution, in denying to the legislature the right to pass any laws impairing the right of bail, except in capital cases, was, as to these offences, to leave them free to pass such laws as they please. This clause of the bill of rights in the constitution was, many years since, made part of the statute law of the State, and was incorporated in the Penal Code. The object of making this class of offences an exception doubtless was, to secure the trial of the accused with more certainty than could be effected by mere personal liabilities. These offences were of so high a grade, that no personal securities were deemed a sufficient guaranty that the offender would be brought to punishment. Under the constitution, and the law as it stood before the adoption of the Penal Code, although the offence might be reduced, on the trial, below the grade of the one charged, still, when the charge was made, and the proof evident or the presumption great, the magistrates were not permitted to take bail. The question, in contemplation of law, to be tried by the magistrates, on an application for bail, was not whether the accused must necessarily be punished with death,—because this they could not know until after the trial,—but whether he might be so punished, and probably would be under the proof. Being satisfied affirmatively on these inquiries, they were bound to refuse bail. The power of fixing the actual guilt was left to the jury. Before the trial, no one could say judicially whether the accused was guilty or not; he might or might not be, according as the jury should decide. The Penal Code is then adopted, giving to the juries the power of saying, in cases of murder in the first degree, whether the accused shall suffer death, or

go to the penitentiary for life. This is but a simple extension of the power of the jury one degree beyond what it was before. Capital punishment still remains, and, in cases where the jury so decide, with precisely the same certainty that it existed before the adoption of the Penal Code. The nature of the inquiry before the magistrate, on a question of bail, is in no respect changed. It was before the adoption of the Penal Code, and still is, whether the offence charged is one which may be capitally punished; and if it may, and the proof is evident or the presumption great, it is not bailable. Juries have always had the power, although not the right, to reduce murder in the first degree to manslaughter; but because they had this power, and chose at times to exercise it, it does not follow that the offence, when the charge was first preferred, was bailable.

This power conferred upon the jury, of deciding whether or not a homicide shall be punished capitally, undoubtedly increases the chances to the murderer of escaping capital punishment; but until he is tried, the offence, in law and in the eye of the constitution, is as much capital, as it was before the adoption of the Penal Code. As long as it may be punished capitally, it must be considered a capital offence.

As to the third ground on which the petitioner bases his application, that is, the facts and circumstances attending the fatal catastrophe as disclosed in the bill of exceptions, we have but to say, that we do not wish, by any expressions falling from us, or any comments upon the facts, to forestall the action of the jury who will have to pass upon the offence, nor in any manner to influence their verdict. We only deem it necessary to remark, that the question of bail on the facts disclosed by the witnesses, is one which has very properly to be passed upon by magistrates and judges of the inferior tribunals, with the witnesses personally before them. These examinations are usually held near the scene of the alleged offence, and in the midst of the circumstances attending the transaction. Under the law, a discretion is reposed in them, to admit to bail or not, as they may think proper under all the facts and circumstances of the case. It is true, they are bound to exercise a sound discretion, whenever a case of this kind comes before them, and to see that no one is illegally

restrained of his liberty; but we should always presume that this discretion had been correctly exercised, until the contrary is plainly made to appear. We do not think that the facts disclosed in the bill of exceptions, present a case which would authorize us to say that the circuit judge decided incorrectly. Considering this as a direct application for bail, on the facts presented in the bill of exceptions, we feel constrained to decide in accordance with the judge below.

The application will therefore be refused.