In May 1979, Matthew L. Beverly, the petitioner herein, was indicted for the intentional killing of Scott Deroo while robbing him, a capital offense.[1] At the same time, he was also indicted for the rape of Melissa Hefner. Following trial on the robbery-intentional killing charge, the petitioner was convicted and sentenced to death. The Court of Criminal Appeals reversed the conviction and remanded the cause for a new trial on the authority of Beck v. Alabama, 447 U.S. 625,100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), on remand, Beck v. State,396 So.2d 645 (Ala. 1980), and Ritter v. State, 403 So.2d 154 (Ala. 1981).
The petitioner was reindicted in the fall of 1981 and tried for that same offense. The case was submitted to the jury with instructions on the robbery-intentional killing charge and on the lesser offenses of murder in the first degree, murder in the second degree, and manslaughter in the first degree. The jury was not instructed on grand larceny, which, under the facts in this case, is a lesser offense included in the robbery-intentional killing charge. He was again convicted of the robbery-intentional killing of Deroo and on April 9, 1982, was sentenced to life imprisonment without parole. On the same date, the 1979 rape indictment was nol-prossed by the trial court on motion of the state. The Court of Criminal Appeals again, on May 31, 1983, reversed the conviction and remanded the cause, holding that there was insufficient evidence of the essential elements of common law robbery because there was no evidence to prove that the victim was deprived of his property by force or fear as charged in the indictment.[2] This court denied *Page 521 
certiorari. See Beverly v. State, 439 So.2d 758 (Ala.Cr.App. 1983).
In February 1984, the petitioner was charged in a four-count indictment with murder in the first degree, rape, kidnapping, and grand larceny. He was tried and convicted of murder in the first degree, rape, and grand larceny in May 1984, and was sentenced to consecutive terms of life imprisonment, 60 years, and 10 years, respectively. The Court of Criminal Appeals affirmed the convictions and sentences on February 12, 1985, and later overruled the petitioner's application for rehearing. He then filed a petition for writ of certiorari, which was granted.
A detailed statement of the facts is contained in the opinion of the Court of Criminal Appeals. Beverly v. State,497 So.2d 513 (Ala.Cr.App. 1985).
The petitioner contends that once his second conviction for the robbery-intentional killing of Deroo was reversed by the Court of Criminal Appeals on the basis of insufficient evidence, the state was precluded from thereafter retrying him for the lesser included offenses of murder in the first degree and grand larceny. He argues that his right, under the Alabama and United States Constitutions, to be free from being twice placed in jeopardy for the same offense has been violated. For the following reasons, we affirm the petitioner's conviction for murder in the first degree; however, we reverse his conviction for grand larceny and render judgment in his favor on that charge.[3]
Both the Alabama and United States Constitutions prohibit a person from being twice placed in jeopardy for the same offense. Const. of Ala. of 1901, Art. I, § 9; U.S. Const., Amend V.
The double jeopardy prohibition contained in the Fifth Amendment has been made applicable to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784,89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).
It is a well established principle of constitutional law that the prohibition against double jeopardy does not generally preclude the retrial of a defendant whose conviction has been reversed on appeal because of an error in the trial proceedings. United States v. Tateo, 377 U.S. 463,84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); Ex parte Collins, 385 So.2d 1005
(Ala. 1980); Robinson v. State, 405 So.2d 1328 (Ala.Cr.App.),cert. denied, 405 So.2d 1334 (Ala. 1981); 21 Am.Jur.2d,Criminal Law, § 309 (1981).
In Tateo, the Supreme Court stated that the reasoning behind this principle is firmly embedded in the sound administration of justice:
 "Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as *Page 522 
they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest. . . ." 377 U.S. at 466, 84 S.Ct. at 1589.
The Supreme Court reaffirmed this reasoning in Burks v.United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978):
 "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow `the State . . . to make repeated attempts to convict an individual for an alleged offense,' since `[t]he constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199
(1957); see Serfass v. United States, 420 U.S. 377, 387-388, 95 S.Ct. 1055, 1061-1062, 43 L.Ed.2d 265
(1975); United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).
". . . .
 "We have no doubt that [United States v. Ball], 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896)," was correct in allowing a new trial to rectify trial error:
 "`The principle that [the Double Jeopardy Clause] does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence.' United States v. Tateo, 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964) (emphasis supplied).
 See United States v. Wilson, 420 U.S. 332, 341 n. 9, 95 S.Ct. 1013, 1020, 43 L.Ed.2d 232 (1975); Forman [v. United States], supra, 361 U.S. [416] at 425, 80 S.Ct. [481] at 486 [4 L.Ed.2d 412 (1960)]. As we have seen in Part II, supra, the cases which have arisen since Ball generally do not distinguish between reversals due to trial error and those resulting from evidentiary insufficiency. We believe, however, that the failure to make this distinction has contributed substantially to the present state of conceptual confusion existing in this area of the law. Consequently, it is important to consider carefully the respective roles of these two types of reversals in double jeopardy analysis.
 "Various rationales have been advanced to support the policy of allowing retrial to correct trial error, but in our view the most reasonable justification is that advanced by Tateo, supra, 377 U.S., at 466, 84 S.Ct., at 1589:
 "`It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.'
 See Wilson, supra, 420 U.S., at 343-344, n. 11, 95 S.Ct., at 1021-1022; Wade v. Hunter, 336 U.S. 684, 688-689, 69 S.Ct. 834, 836-837, 93 L.Ed. 974 (1949). In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt, or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. See Note, Double Jeopardy: *Page 523 
A new Trial After Appellate Reversal for Insufficient Evidence, 31 U.Chic.L.Rev. 365, 370 (1964).
 "The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been submitted to the jury. Since we necessarily afford absolute finality to a jury's verdict of acquittal — no matter how erronous its decision — it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." 437 U.S. at 11-16, 98 S.Ct. at 2147-2150.
In Burks the Court held that the reversal of a judgment of conviction on the basis of insufficient evidence bars a retrial on the same offense upon which the conviction was laid. However, the Court did not have before it the precise question of whether the Fifth Amendment prohibition against double jeopardy precludes a retrial on a lesser included offense, once the reviewing court has reversed the conviction on the greater offense because of insufficient evidence. In Burks, the United States Court of Appeals for the Sixth Circuit had held that there was insufficient evidence to support the determination that the defendant was sane at the time of the robbery and remanded the cause for a determination of whether to direct a verdict of acquittal or order a new trial. Absent a showing of sanity, however, the defendant could not have been convicted of the crime charged, or of any other crime arising from the sameoccurrence. Put another way, if the trial court had correctly ruled in the first place that the jury did not have enough evidence to find the defendant sane at the time of the robbery, it would have had no choice but to enter a directed verdict of acquittal in favor of the defendant. The trial court did not make the correct ruling, and the Sixth Circuit reversed its decision. The Supreme Court, by reversing and rendering judgment (instead of remanding for a new trial), put the defendant in the position he would have been in absent the trial court's error. See Ex parte Edwards, 452 So.2d 508 (Ala. 1984), and cases cited therein.
In Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151,57 L.Ed.2d 15 (1978) (released on the same date as Burks), the Court held that the rule announced in Burks was applicable to state criminal proceedings. However, the Court noted that the issue with which we are concerned was not decided (see Greene, n. 7.)
The Court in Burks distinguished a reversal based on the fact that a conviction was had on insufficient evidence from a reversal based on other errors in the trial proceedings. But for the insufficiency of the evidence, and assuming an otherwise error-free trial, the trial court's submission of an offense to the jury and the jury's finding of guilt as to that offense would not be erroneous. Therefore, in cases such as this, it would seem that the focus of our inquiry should be on the offense which the state failed to prove and upon which a conviction was laid. It is a retrial on that offense following reversal which has double jeopardy implications.
The Court of Criminal Appeals' reversal of the petitioner's second conviction for the robbery-intentional killing of Deroo did not constitute a decision to the effect that the state had failed to prove its case with regard to the lesser included offense of murder in the first degree. As later established, the evidence clearly supported a conviction for that offense. The reversal did, however, constitute a decision by that court that the evidence was insufficient as a matter of law to support a conviction on the robbery-intentional killing charge. That charge should never have been submitted to the jury for their consideration. Had the proper motion been made, the petitioner would have been entitled to a directed *Page 524 
verdict of acquittal on that charge. Therefore, the petitioner's conviction was reversed on appeal. He was not thereafter retried for that same offense. However, he was afforded a new trial, free from this error, on the lesser included offense of murder in the first degree, which had been supported by the evidence in the second trial. This is not a case where the state, once having failed to meet its burden of proof, has "taken another bite at the apple" by means of a second prosecution.
The petitioner relies on Burks and Coleman v. State,373 So.2d 1254 (Ala.Cr.App. 1979). In Coleman, the court stated, at 373 So.2d 1257-58:
 "Having determined that appellant's conviction cannot stand, we must further decide whether or not the double jeopardy clause of the Fifth Amendment to the United States Constitution (as applied to the states through the Fourteenth Amendment) bars a subsequent prosecution on the lesser included offenses of simple assault or assault and battery.
 "An indictment charging assault with intent to murder also embraces the lesser offenses of simple assault and assault and battery. Wilson v. State, 53 Ala. App. 653, 303 So.2d 153 (1974); Simpson [v. State], [59 Ala. 1 (1877)], at 9. A judgment of conviction is a bar to further prosecution that was or could have been embraced within the charge upon which the conviction was laid. Nunley v. United States, 339 F.2d 442 (10th Cir. 1964); United States v. Henry, 504 F.2d 1335 (10th Cir. 1974). Furthermore, in Gray v. United States, 14 F.2d 366, 368 (8th Cir. 1926), it was stated:
 "`. . . although a single act may constitute separate offenses, only one prosecution may be sustained, for the reason that the lesser offense is merged into the greater.'
 See also: Miller v. United States, 300 F. 529 (6th Cir. 1924), cert. denied, 266 U.S. 624, 45 S.Ct. 123, 69 L.Ed. 474 (1924); United States v. Olmstead, 5 F.2d 712 (W.D.Wash. 1925); Wharton's Criminal Procedure, § 580 (12th ed. 1976).
 "In Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 51 L.Ed.2d 187 (1977), the rule was reaffirmed that one convicted of a greater offense may not be prosecuted subsequently on a lesser included offense since this would be the equivalent of two trials for `the same offense.' See also: In re Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889); Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168
(1977).
". . . .
 "From the above discussion, it is clear that appellant cannot be retried on any charge which stemmed from the crime for which he was indicted. The trial court could have submitted the case to the jury on the lesser included offenses and removed from their consideration the charge of assault with intent to murder. Since this was not done, the appellant will go unpunished on the instant charge."
The Court of Criminal Appeals in Coleman also quoted from theBurks discussion concerning reversals based upon evidentiary insufficiency and those based upon other errors. In accord, seeWatkins v. State, 389 So.2d 186 (Ala.Cr.App. 1980) (followingColeman).
As the Court correctly noted in Coleman, a judgment ofconviction is a bar to any further prosecution for an offense which was embraced within the offense upon which the conviction was laid (i.e., a lesser included offense). See also 21 Am.Jur.2d, Criminal Law, § 276 (1981); However, a distinctionmust be made between a judgment of conviction which issustainable on appeal and one, like that in this case, whichwas reversed because of the trial court's error in submittingto the jury a charge unsupported by the evidence. The former isa bar to any further prosecution, but the latter is not a barto further prosecution on the lesser included offenses found tohave been supported by the evidence and upon which the jury wascharged. *Page 525 
After careful review, we read Burks as only precluding a retrial on the offense which the state failed to prove the first time around. Burks goes no further in modifying the established principle that a defendant can be constitutionally retried for an offense following the reversal of a conviction where there has been error in the trial proceedings. To the extent that Coleman and Watkins are contrary to this interpretation, they are overruled.
The petitioner's conviction on the grand larceny count must be reversed and a judgment rendered in his favor on that count. The second indictment charging the petitioner with the robbery-intentional killing of Deroo also embraced the lesser included offense of grand larceny under the facts in this case. See Morris v. State, 97 Ala. 82, 12 So. 276 (1893); Kelly v.State, 235 Ala. 5, 176 So. 807 (1937); Twitty v. State,50 Ala. App. 246, 278 So.2d 247 (1973); Cordial v. State,389 So.2d 170 (Ala.Cr.App. 1980). Once the jury was impaneled and sworn and the indictment was read, jeopardy had attached on that lesser offense. Ex parte Collins, supra; Crist v. Bretz,437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Thereafter, the petitioner was entitled to have his case tried to completion before that jury unless there was a "manifest necessity" for terminating the trial proceedings. Ex parte Collins.
At the petitioner's second trial on the robbery-intentional killing charge, the jury was instructed on the lesser included offenses of murder in the first degree, murder in the second degree and manslaughter in the first degree, but was not instructed on grand larceny. It appears that the state simply chose not to pursue a conviction for that offense, although the petitioner was in jeopardy as to that offense. Had it so elected, the state could have requested the additional instruction. Therefore, with regard to the offense of grand larceny, the trial was abandoned or aborted by the state without manifest necessity.
The petitioner also contends that the prosecution for rape was barred by the three-year statute of limitations embodied in § 15-3-1, Code 1975.
The Court of Criminal Appeals disagreed with the petitioner, stating:
 "Appellant contends that his prosecution for rape was barred by the three-year statute of limitations on rape prosecutions.
 "The rape occurred in April 1979. An indictment was returned against appellant for the rape in May of 1979. In April 1982, this indictment was nol-prossed upon the appellant's conviction for murder during robbery in the first degree and his sentence to life without parole. Upon the reversal of this conviction the appellant was reindicted in February 1984. Alabama Code 1975, § 15-3-6, states that `when an indictment is . . . quashed . . . for any . . . cause . . ., the time elapsing between the preferring of the first charge or indictment and the subsequent indictment must be deducted from the time limited for the prosecution of the offense last charged.' At the very most it appears that only 24 months elapsed in which no indictment was pending against the appellant after the date of the rape. Therefore, the prosecution of appellant for rape was not barred by the statute of limitations." 497 So.2d at 517.
We also disagree with the petitioner, but for a different reason. In applying § 15-3-6, Code 1975, the Court of Criminal Appeals assumed that there was a statute of limitations applicable to rape at the time the petitioner committed the offense.
For the following reasons, we hold that there was not a statute of limitations applicable to rape at the time the petitioner committed the offense and, therefore, we pretermit any discussion of § 15-3-6.
Section 15-3-1 provides:
 "The prosecution of all felonies, except those specified in sections 15-3-3 and 15-3-5, must be commenced within three years after the commission of the offense." *Page 526 
Section 15-3-3, Code 1975, has no bearing on this case, because it concerns the conversion of state or county revenues.
Section 15-3-5, Code 1975, controls this case; at the time the petitioner committed the offense it read as follows:[4]
 "There is no limitation of time within which a prosecution must be commenced for any public offense which may be punished capitally, murder in the first or second degree, manslaughter in the first degree, arson, forgery, counterfeiting or any offense expressly punishable under the provisions of this Code as forgery or counterfeiting." (Emphasis added.)
The dispositive issue is whether rape is a "public offense which may be punished capitally" within the meaning of this section.
Prior to June 29, 1972, rape was an offense punishable "at the discretion of the jury, by death or imprisonment in the penitentiary for not less than ten years." Title 14, § 395, Code 1940 (Recomp. 1958). The applicable statute of limitations at that time was Title 15, § 219, Code 1940 (Recomp. 1958), which read:
 "There is no limitation of time within which a prosecution must be commenced for any public offense which may be punished capitally. . . ." (Emphasis added.)
The remainder of the statute read exactly as its successor (§15-3-5) except that it did not exempt murder in the first degree from the operation of a statute of limitations. Because rape was an offense which could be punished by death prior to June 29, 1972, it is clear that at that time the legislature intended that there be no limitation of time within which a prosecution for rape had to be commenced.
On June 29, 1972, the United States Supreme Court held that the death penalty, as then enforced, violated the Eighth Amendment to the United States Constitution. See Furman v.Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
The full effect of Furman was perhaps unknown in 1972; however, one result that was known was that rape was no longer punishable by death in Alabama under Title 14, § 395.
Subsequently, the legislature attempted to re-establish the death penalty in accordance with Furman by passing Act 75-213 (codified as §§ 13-11-1 through 13-11-9, Code 1975; effective March 7, 1976). However, it was not until 1981 that Alabama actually had an enforceable death penalty law. See Beck v.State, supra. In the meantime, the legislature removed the death penalty as a means of punishment for rape. § 13-1-130, Code 1975 (effective October 1, 1977).[5] *Page 527 
The petitioner insists that the phrase "any public offense which may be punished capitally" within the meaning of § 15-3-5
refers only to an offense actually punishable by death; and, because rape was not punishable by death at the time he committed the offense, he says the three-year limitation prescribed in § 15-3-1 is controlling.
It is true that at the time the petitioner committed the offense (April 1979), rape was not punishable by death in Alabama. Section § 13-1-130; Coker v. Georgia, 433 U.S. 584,97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). However, the question remains whether the abrogation of the death penalty for rape had any effect on the classification of that offense as "capital" for purposes of the statute of limitations. In other words, was rape, which was classified as "capital" prior toFurman, still so classified after Furman for purposes other than the actual enforcement of the death penalty?
This question was answered in Ex parte Bynum, 294 Ala. 78,312 So.2d 52 (1975). In that case the petitioner, who was in custody charged with setting off explosives near a dwelling house and who had been denied bail, filed a petition for writ of habeas corpus in the Court of Criminal Appeals; however, that court denied the petition, 54 Ala. App. 729, 312 So.2d 52
(1974). This Court granted certiorari. Writing for the Court, Justice Jones stated:
"Art. 1, § 16, Alabama Constitution, provides:
 "`That all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great. . . .'
See also Tit. 15, § 195, Alabama Code.
 "It is petitioner's contention that `capital offenses' involve only those crimes punishable by death; and, because Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), has abrogated the death penalty, there are no longer any capital offenses in Alabama. Therefore, petitioner argues, bail must be granted in his case.
"I.
 "We acknowledge that the United States Supreme Court's decision in Furman declared the death penalty unconstitutional as it was then enforced. The threshold issue is whether, under Furman, bail must be constitutionally granted prior to conviction in `capital' cases even if `the proof is evident or the presumption great.' Although this is a case of first impression in Alabama, other jurisdictions have been faced with this question. The majority of these courts have held that offenses which were classified as capital before Furman are still capital, thereby allowing bail to be constitutionally denied for those offenses so classified. People ex rel. Dunbar v. District Court [179 Colo. 304], 500 P.2d 358 (Colo. 1972); Wayans v. Wolfe, 30 Conn. Sup. 60, 300 A.2d 44
(1972); State v. Flood, 263 La. 700, 269 So.2d 212
(1972); Blackwell v. Sessums, 284 So.2d 38 (Miss. 1973); Hudson v. McAdory, 268 So.2d 916 (Miss. 1972); Jones v. Sheriff, Washoe County, [89 Nev. 175], 509 P.2d 824 (Nev. 1973); In re Kennedy, 512 P.2d 201
(Okla.Cr. 1973); Roll v. Larson, 30 Utah 2d 271, 516 P.2d 1392 (1973); State v. Haga, 81 Wn.2d 704, 504 P.2d 787 (1972).
 "The rationale of these decisions indicates that the gravity of the offense is the distinguishing feature and not the penalty which may be imposed. Following this interpretation, certain crimes for purposes of bail are still classified as capital regardless of whether the death penalty may be invoked.
 "Other jurisdictions, however, have held that a person charged with a capital offense now has the constitutional right to bail. State v. Johnson, 61 N.J. 351, 294 A.2d 245 (1972); Commonwealth v. Truesdale, 449 Pa. 325, 296 A.2d 829 (1972); Edinger v. Metzger, 32 Ohio App.2d 263, 290 N.E.2d 577
(1972); Ex parte Contella, 485 S.W.2d 910
(Tex.Cr.App. 1972). See Donaldson v. Sack, 265 So.2d 499 (Fla. 1972). *Page 528 
 "These courts define `capital offense' as one where the penalty of death may be imposed. Thus the effect of Furman, in setting aside the death penalty, has eliminated what was previously designated as a capital offense. In support of this rationale, these courts further reason that, since the purpose of bail is to insure the defendant's attendance at trial, the elimination of the death penalty has lessened his desire to flee.
 "It is the opinion of this Court that the classification theory followed by the majority of states considering this issue is sound and should be adopted. In reaching this decision, we are aware of prior Alabama cases which interpreted the term `capital offense' to mean offenses for which the death penalty may be imposed. Lee v. State, 31 Ala. App. 91, 13 So.2d 583 (1943); Ex parte McCrary, 22 Ala. 65 (1853). But these opinions were not written in the context of Furman (which deals solely with the matter of constitutionally permissible punishment), and their application to the classification of capital offenses for the purposes of bail is not here decisive. The only effect of Furman was to eliminate the imposition of the death penalty as it was then enforced, and not to eliminate the classification whereby crimes are categorized as capital for purposes other than punishment.
"As this Court stated in Ex parte McCrary, supra:
 "`The object of making this class of offenses an exception [to the constitutional right of bail] doubtless was to secure the trial of the accused with more certainty than could be effected by mere personal liabilities. These offenses were of so high a grade, that no personal securities were deemed a sufficient guaranty that the offender would be brought to punishment.'
 Therefore, in the context here applicable `offenses of so high a grade' still exist in Alabama, and the denial of bail is not violative of Art. 1, § 16, Alabama Constitution."
See also Carlisle v. State, 295 Ala. 396, 326 So.2d 776 (1976), and McLoyd v. State, 390 So.2d 1115 (Ala.Cr.App.), cert.denied, 390 So.2d 1121 (Ala. 1980).
Although Bynum did not involve rape or the statute of limitations applicable thereto, it clearly stands for the proposition that offenses, such as rape, which were considered so serious by the legislature as to warrant the death penalty prior to Furman, were still offenses "which [might] be punished capitally" within the meaning of Title 15, § 219, since that statute "categorized [offenses] as capital for purposes other than punishment."
The petitioner argues that by passing the capital punishment statute codified at §§ 13-11-1 through 13-11-9, the legislature intended to statutorily restrict the definition of "offenses which [might] be punished capitally" within the meaning of §15-3-5, to those offenses designated in § 13-11-2. Rape is not an offense designated in § 13-11-2, unless the victim is intentionally killed.
However, as this Court noted in Beck v. State, supra, the legislature, in passing the act codified at §§ 13-11-1 through 13-11-9, intended to pass a constitutional death penalty law. 396 So.2d at 656. In other words, the legislature sought only to classify certain aggravated offenses as "capital" forpurposes of punishment and to establish procedures for the implementation of that punishment which would pass constitutional muster.
The petitioner also makes the point that § 15-3-5 was not recodified in the exact words of its predecessor, Title 15, § 219. In this, he is correct. Section 15-3-5 expressly exempted murder in the first degree from the operation of § 15-3-1. Title 15, § 219, did not exempt that crime from the operation of the statute of limitations. The petitioner argues that the addition of murder in the first degree evidences an uncertainty on the part of the legislature as to the status of the law regarding the classification of offenses as "capital" for purposes of § 15-3-5. He further argues that the legislature could have expressly *Page 529 
exempted rape from the operation of § 15-3-1 at the same time it exempted murder in the first degree, had it so intended.
We need not speculate as to why the legislature chose to expressly exempt murder in the first degree, because we are not persuaded that in doing so it intended for rape to be subject to the operation of § 15-3-1.
Rape is a grave offense. Dissenting in Coker v. Georgia,supra, Chief Justice Burger acknowledged:
 "A rapist not only violates a victim's privacy and personal integrity, but inevitably causes serious psychological as well as physical harm in the process. The long-range effect upon the victim's life and health is likely to be irreparable; it is impossible to measure the harm which results. Volumes have been written by victims, physicians, and psychiatric specialists on the lasting injury suffered by rape victims. Rape is not a mere physical attack — it is destructive of the human personality. The remainder of the victim's life may be gravely affected, and this in turn may have a serious detrimental effect upon her husband and any children she may have. I therefore wholly agree with Mr. Justice WHITE's conclusion as far as it goes — that `[s]hort of homicide, [rape] is the "ultimate violation of self."' . . ."
In Bynum, the Court considered the gravity of the offense to be the distinguishing feature and not necessarily the penalty which might be imposed. Prior to June 29, 1972, the legislature classified rape as an offense so serious as to warrant the death penalty. The legislature has done nothing since Furman to convince us that it ever intended to reclassify rape for purposes other than punishment.[6]
There can be no question under § 15-3-5 (as last amended, effective January 7, 1985) that rape, by definition, is exempted from the operation of § 15-3-1 (see note 4). Subsection (c) of § 15-3-5 (as last amended) indicates that, by amending § 15-3-5, the legislature did not want to create any inference that former § 15-3-5 was inoperative as the result of a decision of any court invalidating Alabama's capital punishment laws. This is strong evidence in support of (and indeed common sense supports) our conclusion that the legislature never intended for rape to cease being a "capital offense" for purposes of the statute of limitations. In fact, it would strain logic for us to conclude that the legislature intended for there to be a thirteen-year period, a gap, so to speak, between 1972 and 1985, when a statute of limitations applied to such a serious offense as rape.
Following the rationale of Bynum, we conclude that at the time the petitioner committed the offense, rape was an "offense which [might] be punished capitally" within the meaning of §15-3-5. Consequently, the prosecution of the petitioner for rape was not barred by any statute of limitations.
AFFIRMED IN PART; REVERSED IN PART AND JUDGMENT RENDERED.
TORBERT, C.J., and MADDOX, BEATTY, ADAMS and STEAGALL, JJ., concur.
JONES and SHORES, JJ., concur in the result.
ALMON, J., concurs in part and dissents in part.
[1] The 1975 capital punishment statute, as contained in §§ 13-11-1 through 13-11-9, was carried over intact to the new criminal code as §§ 13A-5-30 through 13A-5-38. These sections of the new criminal code were repealed, effective July 1, 1981, by the 1981 capital punishment statute, but only as to conduct occurring on or after July 1, 1981. Therefore, conduct occurring before July 1, 1981, is governed by the pre-existing law, i.e., §§ 13-11-1 through 13-11-9. See Spears v. State,428 So.2d 174 (Ala.Cr.App. 1982).
[2] The property taken was a backpack. The facts tend to show that Deroo's backpack was placed in the trunk of the petitioner's automobile prior to the murder. After he killed Deroo, the petitioner took the backpack out of the trunk.
[3] In its opinion, affirming the convictions had at the third trial, the Court of Criminal Appeals reasoned as follows:
 "Murder in the first degree and grand larceny fit the definition of lesser included offenses of `robbery when the victim is intentionally killed' because they can be established by proof of the same or fewer than all the facts required to establish the commission of the greater crime. Ala. Code § 13A-5-31, also compiled as § 13-11-2, Code of Alabama 1975, specifically prohibited conviction of any lesser offenses. Due to this fact, the appellant was protected from any conviction for murder or grand larceny at his original trial. Appellant, therefore, was not exposed to former jeopardy as to these offenses when he was indicted and convicted of grand larceny in the case at hand." 497 So.2d at 517.
This language is somewhat confusing; however, from a reading of the opinion it appears that in so reasoning the court overlooked its reversal of the petitioner's first conviction for the robbery-intentional killing of Scott Deroo pursuant to the mandate of Beck v. State. In Beck, this Court judicially severed that portion of § 13-11-2 (a) which unconstitutionally precluded the submission of lesser included offenses to the jury.
[4] In 1985, the legislature amended § 15-3-5. It now reads as follows:
 "(a) There is no limitation of time within which a prosecution must be commenced for:
"(1) Any capital offense;
 "(2) Any felony involving the use, attempted use, or threat of, violence to a person;
 "(3) Any felony involving serious physical injury or death to a person;
 "(4) Any sex offense involving a victim under 16 years of age, regardless of whether it involves force or serious physical injury of death;
"(5) Any felony involving arson of any type;
"(6) Any felony involving forgery of any type;
"(7) Any felony involving counterfeiting; and
"(8) Any felony involving drug trafficking.
"(b) The amendments made by this act shall apply:
"(1) To all crimes committed after January 7, 1985; and
 "(2) To all crimes committed before January 7, 1985, for which no statute of limitations provided under pre-existing law has run as of January 7, 1985.
 "(c) Nothing herein shall be construed to mean that the adoption of this act indicates that any former statute of limitations applying to capital offenses is invalid as the result of any decision of any court invalidating the capital punishment statutes of the state of Alabama."
[5] Title 14, § 395, was recodified in the 1975 Code as § 13-1-130, which read as follows:
 "Any person who is guilty of the crime of rape shall, on conviction, be punished by imprisonment in the penitentiary for not less than 10 years, or as otherwise specified by law."
(The punishment for rape is now specified in §§ 13A-6-61 and13A-6-62, Code 1975.)
[6] The new criminal code did not alter §§ 15-3-1 and 15-3-5 as those sections apply to the statute of limitations for felony offenses.
As noted, §§ 13A-5-30 through 13A-5-38 of the new criminal code were repealed, effective July 1, 1981, by the 1981 capital punishment statute. (§§ 13A-5-39 through 13A-5-59) See note 1. "Capital offense" is defined in § 13A-5-39 as "an offense for which a defendant shall be punished by a sentence of death or life imprisonment without parole according to the provisions of this article." The 1981 capital punishment statute was but a further refinement of Alabama's death penalty law so as to bring it within the confines of the Constitution. The legislature maintained the underlying scheme of previous capital punishment statutes (i.e., § 13-11-1 through 13-11-9 and § 13A-5-30 through 13A-5-38) by classifying certain aggravated offenses as "capital" for purposes of punishment. *Page 530