A05A0693, A05A0694. GILLIARD v. THE STATE (two cases).
(615 SE2d 187)

SMITH, Presiding Judge.

In Case No. A05A0693, Kenneth Murray Gilliard appeals his conviction after a bench trial of the offenses of manufacturing marijuana and illegally manufacturing alcohol. We granted Gilliard's application for discretionary appeal from the revocation of his probation in Case No. A05A0694. The two cases arise out of the same set of facts, and we have consolidated them for review. In Gilliard's sole

---

enumeration of error, he contends the trial court erred in denying his motion to suppress evidence made on the same ground in both cases. We do not agree and affirm the judgments.

The record shows that in November 2003, the Southwest Georgia Drug Task Force obtained information from an informant that "a large quantity of marijuana and moonshine stills" could be found at Gilliard's residence in Grady County. The informant had previously provided reliable information to the task force on "[a]t least three occasions" that led to arrests. The informant described the location of Gilliard's residence, and the task force confirmed through several sources that Gilliard lived at that address.

Investigator Joshua Creel of the task force then applied for a search warrant for the premises. The affidavit detailed the reliability of the informant and the basis for believing the informant to be reliable. Creel also stated in the affidavit that he had "conducted a criminal history check on" the informant and learned that the informant had numerous arrests, both felony and misdemeanor, and that the informant's motive for assisting the task force was "monetary gain." A magistrate issued the search warrant for Gilliard's person, his house, and its curtilage.

The warrant was executed within hours of its issuance by Creel and several other members of the task force. Inside the house, they found 30 or 40 small marijuana plants in pots under grow lights in a kitchen cabinet and a closet in a back bedroom, as well as 107 gallons of a clear liquid in various bottles. Outside the back door Creel observed a small still. Larger marijuana plants were found at the wood line behind the house. When they searched the woods adjacent to the house, they found an outbuilding containing a larger still. The contraband was seized, analyzed, and identified as marijuana plants and ethyl alcohol.

Gilliard was indicted on three charges: manufacturing marijuana, manufacturing alcoholic beverages in violation of OCGA § 3-3-27 (a) (1), and possessing unstamped distilled spirits in violation of OCGA § 3-3-29. Because Gilliard was on probation for a previous drug offense, his probation officer also filed a petition to revoke his probation. Gilliard filed a motion to suppress the evidence in both cases and filed several other motions in the case concerning the new charges, including a motion to "reveal the deal." The hearing on the motions was consolidated with the probation revocation hearing. A bench trial was later held on the new charges, based by stipulation on the testimony given and the evidence introduced at the consolidated motion/revocation hearing.

The State rested without introducing new evidence, relying on the stipulation. Gilliard, however, introduced testimony from four witnesses in connection with his motion to reveal the deal, to show

that a case was, in fact, dismissed against the purported informant. At the conclusion of the bench trial, the defense renewed its motion to suppress based upon the totality of the evidence presented. At a subsequent hearing, the trial court reaffirmed its ruling denying the motion to suppress, found Gilliard guilty, and pronounced sentence.

Gilliard contends the trial court erred in denying his motion to suppress because the State withheld from the magistrate material evidence regarding the informants. He argues that although the affidavit refers to only one informant, two were actually used: Travis Sanders and Renee Walker. He maintains that one informant (Sanders) was compensated with money, as stated in the affidavit for the warrant, but the other (Walker) was compensated by having a misdemeanor marijuana possession charge against her dismissed. He asserts that the record supports these allegations and that this information was known to Creel but deliberately withheld from the issuing magistrate. He also maintains that Sanders testified that he had not personally seen the growing marijuana and the moonshine but had only been told so by another, contrary to the assertion by Creel in the affidavit. Gilliard argues that the information that was withheld from the magistrate "was likely to cause the magistrate to not issue the search warrant."

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous.

(Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (394 SE2d 639) (1990). "In determining whether an affidavit sufficiently establishes probable cause, we employ the totality of the circumstances analysis enunciated in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), and adopted by this court in *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984)." (Citation and punctuation omitted.) *Elom v. State*, 248 Ga. App. 273-274 (1) (546 SE2d 50) (2001).

Under this analysis, "the reliability of the informant is a relevant consideration [cit.]," and "attesting officers and magistrates should make every effort to see that supporting affidavits reflect the maximum indication of reliability." (Citation and punctuation omitted.) *Elom*, supra at 274. But "the absence of certain information, standing alone, ... is not determinative." (Citations omitted.) Id. "The question

presented is whether, taking a common sense approach, the information presented to the issuing magistrate showed a reasonable probability that contraband would be found in the place to be searched. [Cit.]" *Perkins v. State*, 220 Ga. App. 524 (1) (469 SE2d 796) (1996). The State must certainly reveal any agreement with informants concerning any charges pending against them. "[F]ailure to disclose such an agreement constitutes a violation of the due process requirements of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963)." (Citations and punctuation omitted.) *Jolley v. State*, 254 Ga. 624, 629 (5) (331 SE2d 516) (1985). Here, the State revealed that the informant was paid and had a considerable history of felony and misdemeanor arrests.

Gilliard's insistence that Renee Walker was one of the informants and that a "deal" was made with her to drop a possession charge against her is in no way substantiated by the record. In fact, substantial evidence exists in the record that she did *not* provide information to Creel about Gilliard's activities and that no deal was made with her. She herself testified that she did not provide information to Creel regarding Gilliard and that she had not made any deal with the State. Indeed, Walker acknowledged that she had never met Creel.

Creel agreed, testifying that "I have never seen Catherine Renee Walker in my life. . . . I don't know who Catherine Renee Walker is." Creel also confirmed that Walker was not "the person on whom [he] relied . . . for any information for the search warrant." Walker's stepfather, David Sanders, did testify to the contrary. He testified that he was told by his sister that his stepdaughter had provided information to the authorities, that she had a possession case against her dropped, and that he passed that information on to Gilliard. Clearly, his testimony was hearsay, which has no probative value. *Brock v. State*, 270 Ga. App. 250, 254 (8) (605 SE2d 907) (2004). In addition, later in his testimony he admitted that he did not "really know . . . what kind of deal was made between her and Josh Creel or any other drug agent." This testimony was arguably in conflict, but the trial court had authority to disbelieve that of David Sanders, particularly since it was both hearsay and internally inconsistent.

Gilliard also insists that David Sanders's brother, Travis Sanders, was the informant referred to in the affidavit, and that Creel deliberately withheld from the magistrate the nature of his prior crimes. Gilliard asserts that this information was material and known to Creel at the time he swore to the affidavit. Relying on *Hockman v. State*, 226 Ga. App. 521 (487 SE2d 102) (1997) (physical precedent only), he argues that the motion to suppress should have been granted on that basis. *Hockman* does affirm the proposition that " 'officers seeking warrants should provide the magistrate with any

information they have relevant to a CI's (confidential informant's) reliability or motivation, including criminal records and any payments made.'" Id. at 523 (1). But in *Hockman*, even though the officer did not disclose in his affidavit that an informant "was a paid police informant and an admitted drug abuser," id., or other derogatory information, id. at 521, this court found that the magistrate had probable cause to issue the warrant under the totality of the circumstances. Id.

Here, Creel disclosed in his affidavit that the informant was paid. He also revealed that he had performed a search of the informant's record, and that the informant had "numerous misdemeanor and felony arrests." Creel testified at the hearing on the motion to suppress that he did not disclose the nature of the informant's previous arrests or whether they had resulted in convictions because if he had, it would tend to identify the informant, particularly in the small community where the defendant and the informant both lived.

With regard to the inconsistencies in Travis Sanders's testimony regarding whether he personally saw the contraband or merely had been told about it by a third party, the fact remains that Sanders testified he had been on Gilliard's property and saw a bottle of moonshine and the small still in the back yard. It was never definitively established that Travis Sanders was the informant relied upon in Creel's affidavit. But even if he was the informant, his later testimony contradicting the affidavit in that one respect is not material. In determining the warrant's validity, the test is whether the magistrate had before him sufficient information to show a reasonable probability that contraband would be found. *Elom*, supra, 248 Ga. App. at 274. We therefore look at the information the magistrate had *before* issuing the warrant; later information contradicting the affidavit is not a consideration.

Here, the totality of the circumstances includes the information provided by the informant, the information regarding the informant's past reliability, the confirmation that Gilliard resided at the address pointed out by the informant, and the fact that other task force officers had received similar information regarding Gilliard. We find that these circumstances were sufficient to show a reasonable probability that contraband would be found at Gilliard's residence.

*Judgments affirmed. Ellington and Adams, JJ., concur.*

DECIDED MAY 20, 2005 — CERT. APPLIED FOR.

*Gilbert J. Murrah*, for appellant.

*J. Brown Moseley*, District Attorney, *Joseph K. Mulholland*, Assistant District Attorney, for appellee.